IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD LOCKETT,

        Plaintiff,                                  25cv0259
                                                          ELECTRONICALLY FILED

   v.

SELECTIVE INSURANCE COMPANY OF
THE SOUTHEAST,

        Defendant.

**MEMORANDUM ORDER**

Before the Court is Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint in this bad faith action. For the reasons set forth below, the Motion will be DENIED, and the Plaintiff will proceed at this juncture on his bad faith and breach of contract claims.

**I. Background**

Because the Court writes primarily for the Parties, this section will be truncated. All alleged facts set forth in Plaintiff's Amended Complaint (ECF 10) and restated immediately below, are accepted as true, strictly for the purposes of adjudicating the instant motion.

Plaintiff was the victim of a motor vehicle collision which occurred on August 9, 2022, in Fayette County, Pennsylvania. ECF 10. Plaintiff, while operating a box truck, was struck by another vehicle at a high rate of speed which knocked the box truck onto its driver's side and caused Plaintiff to sustain physical injuries. Id. The accident reconstruction report prepared by the Pennsylvania State Police indicates that the motor vehicle which struck the Plaintiff's truck had been travelling at 102 mph 2.5 seconds before impact and was travelling at 79 mph one-half second prior to impact. Id. Plaintiff

sued the tortfeasor and recovered $100,000 – the bodily injury liability limits – from the tortfeasor. Id. Plaintiff's box truck was insured by a UIM policy issued by Defendant and, "[i]n order to obtain full compensation for the damages incurred as a result of the above-described incident, Plaintiff subsequently filed a claim pursuant to Plaintiff's UIM coverage. . . ." Id. Plaintiff provided Defendant with all medical documentation (records, reports, medical opinions disabling him from work) relative to his treatment and conditions which resulted from the automobile accident, as well as documentation evidencing his wages at the time of the collision along with a medical cost projection of $983,122.34, past wage loss, and a future wage loss calculation of $395,791.69. Id. In response to Plaintiff's demand of the UIM policy limits of $1,000,000, Defendant offered $121,517.03 in addition to the $100,000 that Plaintiff had already received from the tortfeasor. Id. Plaintiff's Complaint specifically notes that in response to Plaintiff's inquiry relative to its offer, Defendant indicated that it would offer nothing for Plaintiff's future wage loss because "'there's something out there that [Plaintiff] can do'" but did not elaborate further. Id. Plaintiff's Complaint alleges that Defendant's offer of $121,517.03 (allowing zero dollars for future wage loss) demonstrates Defendant's belief in the substance of Plaintiff's physicians' opinions. Id. Finally, Plaintiff's Complaint suggests that Defendant demonstrated bad faith by refusing "to include any wage loss whatsoever in its evaluation when those same physicians [opined] that Plaintiff could not and cannot work as a result of his injuries sustained as a result of this [motor vehicle accident] . . . ."

Plaintiff sued Defendant for bad faith and breach of contract in Court of Common Pleas in Pennsylvania, but Defendant removed the matter to this Court and then filed a

motion to dismiss. (ECF 6) Plaintiff filed an Amended Complaint (presently before this Court) to cure the alleged deficiencies raised by Defendant in its previous motion to dismiss, and Defendant filed the instant Motion to Dismiss Count I of the Amended Complaint. ECF 10, ECF 11. Plaintiff filed a response and Defendant filed a reply making the matter ripe for adjudication. ECF 21, ECF 26.

## II. Standard of Review

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the... claim is and the grounds on which it rests'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining the plausibility of an alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. Discussion

The Amended Complaint in the instant action raises a claim for statutory bad faith.[1] The Pennsylvania Supreme Court defines bad faith as "any frivolous or unfounded

---

[1] Pennsylvania law provides for two types of "bad faith" claims by an insured against an insurer. *McPeek v. Travelers Cas. and Sur. Co. of Am*., Civ. A. No. 06–114, 2007 WL 1875801, at *2 (W.D.Pa. Jun. 27, 2007) (citing *The Birth Center v. St. Paul Co*., 567 Pa. 386, 787 A.2d 376 (2001) (Nigro, J., concurring)). The first consists of a statutory bad faith tort claim under 42 Pa.C.S. § 8371, akin to the claim presently being challenged by Defendant in the instant case, and pursuant to which the insured may recover only the damages set forth in the statute, including punitive damages, attorney fees, court costs, and interest. *Id*. The second involves a contract claim for breach of the implied contractual duty to act in good faith, which is separate and distinct from the statutory bad faith claim. *Haugh v. Allstate Ins. Co*., 322 F.3d 227, 236 (3d Cir.2003) (citing *Birth Center*, 787 A.2d at 386; *McPeek*, 2007 WL 1875801, at *2. Pursuant to this latter

refusal to pay proceeds of a policy[.]" *Borden v. NGM Ins. Co.*, 660 F. Supp. 3d 322 (E.D. Pa. 2023) (*citing Rancosky v. Wash. Nat'l Ins. Co.*, 642 Pa. 153, 170 A.3d 364, 373 (2017)), *appeal dismissed*, *Borden v. 6 Ins. Co.*, No. 23-1622, 2023 WL 6446209 (3d Cir. July 13, 2023).

"To recover on a bad faith claim, a plaintiff will be required to show by clear and convincing evidence that: (1) the defendant insurer did not have a reasonable basis for denying the policy benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis when it denied the claim." *Camp v. N.J. Mfrs. Ins. Co.*, No. 16-1087, 2016 WL 3181743, at *4 (E.D. Pa. June 8, 2016) (*citing Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)).

A statutory bad faith claim, like the one present in the instant case, is not restricted to an insurer's bad faith denial of a claim, "but rather extended to an insurer's 'investigative practices.'" *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa.Super. 1999). In turn, "the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith under section 8371." Id. at 907. A plausible bad faith claim is made when the plaintiff describes, "who, what, where, when and how the alleged bad faith conduct occurred." *Liberty Ins. Corp. v. PGT Trucking, Inc.*, No. 2:11-cv-151, 2011 WL 2552531, *13 (W.D. Pa. June 27, 2011).

The Pennsylvania Superior Court has defined bad faith in the insurance context as meaning:

> [a]ny frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against

---

claim, an insured can recover traditional contract damages, including compensatory damages. *Kakule v. Progressive Cas. Ins.*, Civ. A. No. 06–4995, 2007 WL 1810667, at *4 (E.D.Pa. Jun. 20, 2007). Notably, no common law tort remedy exists for bad faith by an insurer. *Id*. at *3; *Meyer v. Cuna Mut. Group*, Civ. A. No. 03–602, 2007 WL 2907276, at *14 (W.D.Pa. Sep. 28, 2007).

4

>an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (for example, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v Prudential Prop & Cas. Ins. Co.*, 649 A.2d 680, 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 887 (Pa.Super. 2000).

Based on the allegations of the Amended Complaint, and boiled down to its simplest form, the bad faith claim alleged by Plaintiff arises from the fact that the Parties dispute the value of Plaintiff's UIM claim. ECF 10.[2] Again, taking all allegations as true solely for the purposes of adjudicating the instant partial motion to dismiss, Defendant, by it is offer of $121,517.03, demonstrated to Plaintiff that it was/is willing to pay *something* in response to the claim Plaintiff made for UIM benefits under Defendant's policy, but Plaintiff does not agree that Defendant arrived at a reasonable value because it did not properly investigate his UIM claim, specifically with respect to his wage loss claim and medical opinions support his wage loss.

The Amended Complaint alleges that by offering Plaintiff $121,516.03, Defendant "essentially demonstrated" that Plaintiff had a valid UIM claim. ECF 10. Plaintiff's Amended Complaint also alleges that Defendant indicated that it believed Plaintiff could perform work, despite the medical reports, records, and opinions disabling him from doing so. The Amended Complaint also suggests Defendant had no basis upon

---

[2] As further explained by the Parties in their respective briefs, Plaintiff alleges that Defendant engaged in bad faith when it offered to settle the claim for approximately 12% of what Plaintiff requested. Defendant contends that Plaintiff filed suit before it could complete it investigation and consider whether Plaintiff could work again in the future and properly determine wage loss.

5

which to form its belief. Id. Next, the Amended Complaint alleges that Defendant accepted the opinion of Plaintiff's physicians, whose records and reports illustrated the nature and extent of Plaintiff's physical injuries, which presumably convinced Defendant to value Plaintiff's UIM claim in the amount of $121,516.03, in addition to the $100,000 Plaintiff had already received from the underlying tortfeasor's policy limits. Id. The Amended Complaint further indicates that Defendant seemingly rejected Plaintiff's physicians' opinions about Plaintiff's injuries causing him to sustain a wage loss due to a physical inability to perform work. Id. Accordingly, the Amended Complaint factually concludes that this Court can "draw a reasonable inference that Defendant has committed bad faith in its ***handling*** of Plaintiff's [UIM] claim" because Defendant has refused to pay for any wage loss. Id. (Emphasis added). Finally, the Amended Complaint also notes that when asked why it would not provide for any wage loss benefits, Defendant merely concluded that "there's something out there that [Plaintiff] can do." Id.

In a nutshell, Plaintiff's Complaint alleges that because Defendant disregarded the portions of the medical reports and records which disabled him from work, creating a wage loss claim, Defendant failed to properly handle Plaintiff's UIM claim, set a low[er] value on Plaintiff's UIM claim, and thus, engaged in bad faith. Id.

In its brief in support of its Motion to Dismiss, Defendant argues that the bad faith claim should be dismissed because: (1) it offered at least some of the UIM proceeds to Plaintiff; and (2) the allegations concerning Plaintiff's past and future wage losses, which exceeded the amount offered by Defendant's policy, lacked factual support as to "why, together with the $100,000.00 already received from the tortfeasor, the amount [of UIM

proceeds offered by Defendant] was insufficient to compensate Plaintiff for his claimed injuries." ECF 13.

Plaintiff countered Defendant's argument by distinguishing this case from the cases cited by Defendant in its brief. ECF 21. In that regard, Plaintiff noted that his Amended Complaint makes very specific factual which provide the who, what, where, when and how the alleged bad faith conduct occurred. Id.

In its reply brief, Defendant noted that Plaintiff offered no affirmative cases in support a claim for bad faith where an insurer has offered at least some insurance proceeds. ECF 26. Relying in part on *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa.Super. 2009), Defendant argues that "bad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages. Negligence or bad judgment will not support a bad faith cause of action. Rather, the insured must demonstrate that the insurer 'breached its duty of good faith through some motive of self-interest or ill-will.'" *Id.* (quoting *Brown v. Progressive Insurance Co.,* 860 A.2d 493, 501 (Pa.Super. 2004)) (internal citations omitted). Although Defendant has correctly read the *Johnson* case, this Court notes that the *Johnson* case also determined that "[b]ad faith conduct also includes 'lack of good faith investigation into facts, and failure to communicate with the claimant," both of which Plaintiff alleges in his instant Amended Complaint.

Based on all the foregoing law, as well as the facts of this case as plead by Plaintiff in his Amended Complaint, the Court finds that Plaintiff's bad faith claim meets the threshold requirements set forth in the *Twombly/Iqbal* progeny of cases, and thus, can survive Defendant's Motion to Dismiss. Because of this decision, Plaintiff is free to try to

adduce evidence to support the clear and convincing standard that Defendant acted in bad faith.

**IV. Conclusion**

For all of the reasons stated herein, Defendant's Motion to Dismiss Count I of the Amended Complaint is DENIED.

SO ORDERED, this 11th day of April, 2025.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc: ECF Counsel of Record